**KAPLAN FOX & KILSHEIMER LLP**
Justin B. Farar (SBN 211556)
12400 Wilshire Boulevard, Suite 910
Los Angeles, CA 90025
Telephone: 310-614-7260
Facsimile: 310-614-7260
Email: *jfarar@kaplanfox.com*

**KAPLAN FOX & KILSHEIMER LLP**
Laurence D. King (SBN 206423)
Matthew B. George (SBN 239322)
Blair E. Reed (SBN 316791)
Clarissa R. Olivares (SBN 343455)
Walter B. Howe (SBN 244680)
1999 Harrison Street, Suite 1501
Oakland, CA 94612
Telephone: 415-772-4700
Facsimile: 415-772-4707
Email: *lking@kaplanfox.com*
        *mgeorge@kaplanfox.com*
        *breed@kaplanfox.com*
        *colivares@kaplanfox.com*
        *whowe@kaplanfox.com*

*Attorneys for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HANNAH BUI, JANICE LEBLANC, and TERESA CONTRERAS, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>   v.<br><br>THE WALT DISNEY COMPANY, DISNEY ENTERTAINMENT OPERATIONS LLC, DISNEY WORLDWIDE SERVICES, INC., GOOGLE LLC, and YOUTUBE LLC,<br><br>          Defendants. | Case No. 2:25-cv-09920<br><br>**CLASS ACTION**<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Hannah Bui, Janice LeBlanc, and Teresa Contreras ("Plaintiffs"), by and through their attorneys, individually and on behalf of all others similarly situated, bring this action against Defendants, The Walt Disney Company, Disney Entertainment Operations LLC, and Disney Worldwide Services, Inc. (collectively "Disney"), and Defendants Google LLC, and YouTube LLC (collectively "YouTube," and collectively with Disney "Defendants") allege based upon personal knowledge of the allegations pertaining to themselves, and upon information, belief, and the investigation of counsel as to all other allegations:

**INTRODUCTION**

1.    Defendants have unlawfully collected and profited off the personal information of millions of children under the age of 13 ("Children") who viewed Disney's videos posted on YouTube containing content directed at Children but designated to YouTube as "Not Made for Kids" ("Mislabeled Videos"). When Plaintiffs and Class Members viewed Mislabeled Videos, Defendants collected and retained Plaintiffs' and Class Members' personal information without consent, and Plaintiffs and Class Members were subjected to age-inappropriate YouTube features, including autoplay, comments, and targeted behavioral advertising.

2.    Since 2019 YouTube has required content creators such as Disney to indicate whether videos they upload to its platforms are "Made for Kids" ("MFK") or "Not Made for Kids" ("NMFK"). YouTube enacted this policy as part of a historic $170 Million settlement with the Federal Trade Commission ("FTC") and the New York Attorney General over allegations YouTube was violating the Children's Online Privacy Protection Act ("COPPA"), a U.S. law that protects the online privacy of children under 13 by requiring parental consent for the collection of their personal information.[1] COPPA mandates that operators of websites and online services

---

[1] *See* Press Release, Fed. Trade Comm'n, Google and YouTube Will Pay Record $170 Million for Alleged Violations of Children's Privacy Law (Sept. 4, 2019), https://www.ftc.gov/news-events/news/press-releases/2019/09/google-youtube-will-pay-record-170-million-alleged-violations-childrens-privacy-law (last accessed

targeted to Children have a privacy policy, get verifiable parental consent before collecting data, give parents access to their child's information, and maintain reasonable security for collected data.[2]

3.      Disney chose not to follow YouTube's policy and instead uploaded Mislabeled Videos, making them available to Children, including Plaintiffs and Class Members, and as a consequence Defendants collected Plaintiffs' and Class Members' personal information without their or their guardians' consent, in violation of COPPA and other state and federal laws.

4.      YouTube was aware of Disney's noncompliance with its "Made for Kids" policy and failed to take adequate measures to correct it. As a result, YouTube collected, retained and used Plaintiffs' and Class Members' personal information without consent and profited off of additional advertising and subscription revenues gained as a result of the Mislabeled Videos.

5.      In addition to having their private personal information collected by Defendants, Children who viewed the Mislabeled Videos were subjected to inappropriate adults-only functionality on YouTube, including the ability to interact with, make, and read public user comments, "follow" and "like" channels, have successive content "autoplay" when a Mislabeled Video finishes, and receive targeted behavioral advertisements based on their inferred interests and behaviors, collected from their online activities.[3] All these features increase the child's value to advertisers and engagement with Disney's content, thereby increasing Disney's and YouTube's profits at the expense of Children's legally protected privacy rights.

---

October 16, 2025) ("YouTube Settlement Announcement").

[2] *See* 15 U.S.C.A. §§ 6501 *et seq.*

[3] *See* Business Blog, Fed. Trade Comm'n, Protecting children watching YouTube videos: Lessons learned from FTC's settlement with Disney (Sept. 2, 2025), https://www.ftc.gov/business-guidance/blog/2025/09/protecting-children-watching-youtube-videos-lessons-learned-ftcs-settlement-disney (last accessed October 16, 2025).

## PARTIES

6.     Plaintiff Hannah Bui is a resident of South Carolina. Plaintiff Bui is the parent of three children who, while under the age of 13, viewed Defendants' Mislabeled Videos and, on information and belief, had their personal information collected and used by Defendants, in violation of state and federal laws. Plaintiff Bui is filing these claims as a real party in interest for herself and her minor children pursuant to Federal Rule of Civil Procedure 17(a)(1)(C).

7.     Plaintiff Janice LeBlanc is a resident of Massachusetts. Plaintiff LeBlanc is the parent of one child who, while under the age of 13, viewed Defendants' Mislabeled Videos and, on information and belief, had their personal information collected and used by Defendants, in violation of state and federal laws. Plaintiff LeBlanc is filing these claims as a real party in interest for herself and her minor child pursuant to Federal Rule of Civil Procedure 17(a)(1)(C).

8.     Plaintiff Teresa Contreras is a resident of California. Plaintiff Contreras is the parent of five children who, while under the age of 13, viewed Defendants' Mislabeled Videos and, on information and belief, had their personal information collected and used by Defendants, in violation of state and federal laws. Plaintiff Contreras is filing these claims as a real party in interest for herself and her minor children pursuant to Federal Rule of Civil Procedure 17(a)(1)(C).

9.     Defendant The Walt Disney Company is a Delaware corporation with its principal place of business at 500 South Buena Vista Street, Burbank, California 91521.

10.     Defendant Disney Entertainment Operations LLC is a Florida limited liability company, with its principal place of business at 500 South Buena Vista Street, Burbank, California 91521.

11.     Defendant Disney Worldwide Services, Inc. is a Florida corporation with a California office at which all its directors and principal officers are located at

1   500 South Buena Vista Street, Burbank, California 91521.[4]

2       12.    Defendant Google LLC is a Delaware limited liability company, with

3   its principal place of business at 1600 Amphitheatre Parkway, Mountain View, CA

4   94043. According to YouTube's Terms of Service, Google LLC is the entity

5   providing the YouTube platform and the products, services and features made

6   available as part of the platform.[5]

7       13.    Defendant YouTube LLC is a Delaware limited liability company, with

8   its principal place of business at 901 Cherry Ave., San Bruno, CA 94066, and is a

9   wholly owned subsidiary of Google LLC.

10                              **JURISDICTION**

11      14.    This Court has personal jurisdiction over the Defendants. The Court also

12  has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d).

13  Defendants have transacted business and affairs in California and have committed

14  the acts complained of in California. The amount in controversy exceeds

15  $5,000,000.00, exclusive of interest and costs, and this case is a class action in which

16  some members of the Class and Subclasses are citizens of different states than

17  Defendants. *See* 28 U.S.C. § 1332(d)(2)(A). This Court has supplemental jurisdiction

18  over the state law claims pursuant to 28 U.S.C. § 1367.

19      15.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b),

20  (c), and (d) because a substantial part of the events giving rise to Plaintiffs' claims

21  occurred in this district. Disney has maintained their U.S. headquarters in this district,

22  and Defendants have transacted business and affairs in this district and have

23  committed the acts or omissions complained of in this district.

24  _____

25  [4] *See* Statement of Information filed with the Office of the Secretary of State for the
    State of California by Disney Worldwide Services, Inc., Entity No. 1653950 (Dec.
26  12, 2024),
    https://bizfileonline.sos.ca.gov/api/report/GetImageByNum/1822241180830541101
27  3203104714721210418412500230 (last accessed October 16, 2025).

28  [5] *See* YouTube, Terms of Service, https://www.youtube.com/static?template=terms
    (last accessed October 16, 2025).

1

## FACTUAL ALLEGATIONS

2

### A.    Disney Markets Itself as a Safe and Responsible Children's Entertainment Provider

3

4      16.    The Walt Disney Company is a major global media and entertainment

5   conglomerate that owns various subsidiaries, including Disney Entertainment

6   Operations LLC, and Disney Worldwide Services, Inc. Disney's operations

7   encompass film and television production (including brands like Marvel and

8   Lucasfilm), streaming services (such as Disney+), theme parks and resorts

9   worldwide, consumer products, and digital media platforms. Founded in 1923,

10   Disney is known for its rich history in storytelling and iconic characters, leveraging

11   strategic acquisitions and a diversified portfolio to create a powerful entertainment

12   ecosystem.

13      17.    Disney prides itself as one of the world's "Most Reputable Companies,"

14   claiming "Our commitment to be among the most admired companies in the world

15   guides our actions as a company and our efforts to promote the happiness and well-

16   being of kids and families."[6]

17      18.    Disney also touts that it is among the world's "Most Socially

18   Responsible Companies" and that it "received top honors in the citizenship category

19   for our philanthropic and environmental efforts" and "value[s] our role in being a

20   good corporate citizen in the global community. . . ."[7]

21      19.    At its core, Disney's target market consists of families with young

22   children, particularly those aged 4 to 12, who are introduced to the brand through

23   animated films, television series, toys, merchandise, or streaming content.[8]

---

24   [6] *See* The Walt Disney Company, Disney Named World's Most Reputable
25   Company (Apr. 15, 2014), https://thewaltdisneycompany.com/disney-named-worlds-most-reputable-company/ (last accessed October 16, 2025).

26   [7] *See* The Walt Disney Company, Disney Named Most Socially Responsible
27   Company (Oct. 9, 2013), https://thewaltdisneycompany.com/1030-2/ (last accessed October 16, 2025).

28   [8] *See* Daniel Pereira, Disney Target Market Analysis, The Business Model Analyst (July 19, 2025), https://businessmodelanalyst.com/disney-target-market-

Characters like Elsa from Frozen or Lightning McQueen from Cars are designed to appeal directly to this age group, with bright visuals, catchy music, and simple yet emotional storylines.[9] Disney leverages these characters in every facet of marketing—from merchandise to theme parks.[10] Parents, typically aged 25 to 45, are also a primary focus—both as gatekeepers of household spending and as nostalgic consumers themselves.[11] Disney designs experiences, from movie themes to theme park attractions, that appeal to this dual-layer of child excitement and parental trust.[12]

20.    Disney appeals to educated, brand-conscious consumers who value safe, imaginative content for their children and resonate with family-oriented messaging.[13] Parents often choose Disney content due to its strong focus on family-friendly themes, extensive library of beloved classics and new franchises, strong parental controls for younger viewers, and its ability to educate and promote positive values.[14] Other competitors may lack Disney's curated content, the established trust and brand recognition, or the specific features and content tailored to families with young children. Indeed, the perception among parents is that Disney provides superior educational content to its competitors, including academic and social curriculum that is above and beyond its competition.[15]

21.    Disney's target market is emotionally driven, responding to themes of

---

analysis/?srsltid=AfmBOoqqapg4kzMYYBE18DdEu8CnKLzKkcQ9OOlrwAvPvWpkstd82B2i (last accessed October 16, 2025).

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *See, e.g.*, Rujula Rao, Streaming Wars: Analyzing the Competitive Dynamics of Disney+ vs. Netflix, Medium.com (June 18, 2024), https://medium.com/@rujularao/streaming-wars-analyzing-the-competitive-dynamics-of-disney-vs-netflix-aad4e42f776f (last accessed October 16, 2025).

[15] *See, e.g.*, Charlene DeLoach, How Disney Junior Changed Our Disney World Experience, Playroom Chronicles, https://www.playroomchronicles.com/disney-junior-disney-world/ (last accessed October 16, 2025).

imagination, family, nostalgia, adventure, and empowerment.[16] These psychographic traits vary by segment, but they all align with Disney's storytelling model.[17] For example, parents value wholesome, safe entertainment and respond to narratives about love, resilience, and community.[18] Films like Encanto or Finding Dory emphasize these ideals, reinforcing Disney's position as a family-first brand.[19] Psychographically, Disney taps into universal values such as imagination, bravery, and family connection, using storytelling to create emotional bonds.[20]

22.    Disney covets its reputation for being socially responsible, safe, family-friendly, educational, and trustworthy, but Disney has betrayed that trust by its nonconsensual, wholesale collection and exploitation of Children's personal information to dive profits.

## B.    Disney's YouTube Video Business

23.    Disney maintains an extensive and diverse presence on YouTube, using multiple official channels to publish content for its various brands and franchises. This strategy allows the company to reach different audiences with content tailored for each segment.[21] Disney uses YouTube as a publishing vehicle for official content, such as full-length videos, clips, music videos, as well as promotional content for Disney Parks as well as their various brands and franchises.

24.    Disney offers several YouTube channels for kids, including the popular Disney Jr. for preschoolers,[22] the general Disney Kids channel featuring various characters,[23] and the Disney Channel Animation channel for older kids interested in

---

[16] *See* Pereira, *supra.*

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *See* https://www.youtube.com/disney (last accessed October 16, 2025).

[22] *See* https://www.youtube.com/channel/UCNcdbMyA59zE-Vk668bKWOg#:~:text=Disney%20Jr.,Live (last accessed October 16, 2025).

[23] *See*

classic and new animated shows.[24] Other channels also host a variety of family-friendly content.

25.    Disney profits from YouTube videos through a combination of monetization methods, such as the YouTube Partner Program, enabling it to earn a share of the revenue from ads that appear on their videos.[25] YouTube shares 55% of net ad revenue from watch page ads with creators.[26] Disney also receives a portion of YouTube Premium subscription fees from viewers who watch its content, even though these viewers are watching ad-free.[27]

26.    Disney's mislabeling of videos enables autoplay, exposing Children to more of its videos, thus increasing Disney's revenue from subscription fees and/or advertising.

27.    In addition to revenue received from YouTube for ad sales and subscription fees, Disney profits indirectly from increased fan engagement, converting to merchandise sales and affiliate marketing. Indeed, Disney can sell its own branded merchandise or products directly through YouTube's shopping features.[28]

28.    In addition to revenue, Defendants receive valuable viewer data, including metrics like views, watch time, audience demographics (age, gender, geography), and subscriber activity.[29] Defendants share user data with third-party

---

https://www.youtube.com/channel/UC7Gf2tZ8coTX2ckTPgn62iQ#:~:text=You're%20watching%20Disney%20Kids,2%20days%20ago (last accessed October 16, 2025).

[24] *See* https://www.youtube.com/channel/UCw7SNYrYei7F5ttQO3o-rpA#:~:text=Check%20out%20the%20official%20Disney,Did%20someone%20say%20Perry%2Dscope? (last accessed October 16, 2025).

[25] *See* YouTube Help Center, YouTube partner earnings overview, https://support.google.com/youtube/answer/72902?hl=en (last accessed October 16, 2025).

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *See* YouTube Help Center, Analyze performance with analytics, https://support.google.com/youtube/topic/9257532?hl=en&ref_topic=9257610&sjid

advertisers, brands and platforms, leading to increased earning opportunities from ads, brand deals and shopping affiliate programs.[30]

29.    Targeted behavioral advertising displays ads to consumers based on their inferred interests and behaviors, collected from their online activities such as browsing history, searches, and social media interactions.[31] This practice involves using data to predict user preferences and show them relevant advertisements, a process that relies on cookies and sophisticated algorithms.[32] Advertisers use this method to reach specific, engaged audiences, increasing the likelihood of conversions, while publishers benefit from higher ad revenue due to the increased value of targeted ad impressions.[33]

30.    Defendants' collection of Plaintiffs' and Class Members' personal information has been a key revenue driver for their advertising income. Behaviorally, Defendants track how consumers engage with content—like binge-watching trends—to personalize recommendations.[34] Behavioral segmentation focuses on how consumers interact with a brand—looking at usage habits, purchasing patterns, loyalty behaviors, and product engagement. For Defendants and their advertisers, these insights are central to designing personalized content, fostering brand loyalty, and increasing lifetime customer value.[35] Defendants identify and segment their

---

=7659580696519350493-NC (last accessed October 16, 2025).

[30] *See* YouTube Help Center, Manage channel insights sharing with third-party advertisers, brands and platforms, https://support.google.com/youtube/answer/16261569?hl=en-GB&ref_topic=9257897 (last accessed October 16, 2025).

[31] *See, e.g.,* Video, Data Science Dojo, What is Behavioral Targeting? | Marketing Analytics for Beginners | Part-23 (June 1, 2022), https://www.youtube.com/watch?v=iGRofrkmI2Y&t=1s (last accessed October 16, 2025).

[32] *Id.*

[33] *Id.*

[34] *See* Pereira, *supra*.

[35] *Id.*

1    audience based on frequency of use and platform engagement.[36]

2    31.    Family income is an important demographic factor in Defendants' ad

3    targeting.[37] For example, Disney's own marketing strategy targets middle to upper-

4    middle-income families, those who can afford streaming subscriptions, theatrical

5    releases, merchandise, and costly vacation packages to Disney theme parks.[38] For

6    example, a family trip to Disney World typically costs several thousand dollars,

7    positioning it as a premium experience.

8    32.    Geographic segmentation involves tailoring products and marketing

9    efforts based on location—ranging from country and region to urban versus rural

10   areas.[39] Urban areas are a key geographic focus, particularly for streaming, as cities

11   offer higher internet penetration and a greater appetite for streaming content, making

12   them prime targets for digital campaigns.[40]

13   33.    Purchase behavior is another key signal. Defendants track merchandise

14   buying habits—like which characters are most purchased or what age groups prefer

15   certain toy lines—to inform ad placement.[41]

16   34.    Psychographic segmentation dives into consumers' values, interests,

17   lifestyles, and personalities.[42] For Disney, this form of segmentation is crucial

18   because the brand's appeal often hinges on emotional resonance and storytelling

19   values, not just product features.[43]

20   35.    Disney's YouTube video business is a powerful revenue machine, all

21   the more because for the past five+ years, Defendants have availed themselves of

22   data analytics, ad targeting, and user engagement features that are designed and

23   [36] *Id.*

24   [37] *Id.*

25   [38] *Id.*

     [39] *Id.*

26   [40] *Id.*

27   [41] *Id.*

     [42] *Id.*

28   [43] *Id.*

1    intended for adult's use only.

2        **C.    YouTube's $170 Million Settlement with the Federal Trade**
3            **Commission and Its "Made for Kids" Policy**

4        36.    In addition to paying $170 Million in 2019 over the FTC's allegations
5    it violated COPPA, YouTube was required to institute its "Made for Kids" policy
6    requiring content creators to designate their content as intended for children if its
7    primary audience is kids, based on factors like subject matter, characters, or themes.
8    Content is considered "Not Made for Kids" if it has mature themes like sexual
9    content, violence, or is aimed at a general audience rather than children.[44] This
10    designation affects monetization, as "Made for Kids" content receives non-
11    personalized ads due to restrictions on collecting personal data from children under
12    13.[45]

13        37.    The intent of YouTube's Made for Kids Policy is to ensure that it is in
14    compliance with COPPA and other laws.[46] The "Made for Kids" designation ensures
15    that some features on videos that are classified as MFK are disabled.[47] For example,
16    YouTube does not collect personal information or serve personalized ads to viewers
17    watching videos marked as MFK and does not allow for comments to be posted to
18    those videos.[48]

19        38.    YouTube creators label videos "Made for Kids" or "Not Made for Kids"
20    through the YouTube Studio, either in the channel settings (which sets a default for

---

21    [44] *See* YouTube Settlement Announcement.

22    [45] *See* YouTube Help Center, Made for kids content,
23    https://support.google.com/youtube/topic/9689353?hl=en&ref_topic=2803240&sjid
    =7659580696519350493-NC (last accessed October 16, 2025).

24    [46] *See* Press Release, Fed. Trade Comm'n, Disney to Pay $10 Million to Settle FTC
    Allegations the Company Enabled the Unlawful Collection of Children's Personal
25    Data (Sept. 2, 2025), https://www.ftc.gov/news-events/news/press-
    releases/2025/09/disney-pay-10-million-settle-ftc-allegations-company-enabled-
26    unlawful-collection-childrens-personal (last accessed October 16, 2025) ("Disney
    Settlement Announcement").

27    [47] *Id.*

28    [48] *Id.*

all future videos) or on an individual video basis during the upload process or by editing an existing video.[49]

39.    YouTube's made for kids policy was announced in September 2019, following a settlement with the Federal Trade Commission (FTC).[50] The company began to implement the changes in November 2019 and officially rolled them out in January 2020.[51]

40.    YouTube purports to enforce its "Made for Kids" policy through a combination of creator self-designation, automated machine learning systems, and human review.[52] Creators are required to label their content as "Made for Kids" or not, and YouTube's automated systems then review this designation.[53] If a creator misuses this feature or is incorrect, YouTube's systems or human reviewers will override the setting to comply with laws like COPPA.[54] However, YouTube admits that "in most cases, we'll rely on [creators'] audience setting to determine whether a video is Made for Kids."[55] YouTube's lax enforcement enabled Disney's posting of Mislabeled Videos, and YouTube's failure to detect and correct Disney's noncompliance is inexcusable, especially because both YouTube and Disney profited handsomely off of Plaintiffs' and Class Members' personal information.

---

[49] *See* YouTube Help Center, Set your channel or video's audience, https://support.google.com/youtube/answer/9527654?hl=en-GB&co=GENIE.Platform%3DAndroid#:~:text=Regardless%20of%20your%20location%2C%20you,Made%20for%20Kids%20or%20not. (last accessed October 16, 2025).

[50] *See* Press Release, YouTube, Better protecting kids' privacy on YouTube (Jan. 6, 2020), https://blog.youtube/news-and-events/better-protecting-kids-privacy-on-youtube/ (last accessed October 16, 2025).

[51] *Id.*

[52] *See, e.g.*, Video, YouTube Creators, Important Update for All Creators: Complying with COPPA (Nov. 12, 2019), https://www.youtube.com/watch?v=-JzXiSkoFKw (last accessed October 16, 2025).

[53] *Id.*

[54] *Id.*

[55] *Id.*

**D. Disney's $10 Million Settlement with the Federal Trade Commission**

41.     Since the inception of YouTube's Made for Kids Policy, Disney chose to mark all of its videos at the channel level and failed to change the default to mark each video individually.[56] As a consequence, Disney uploaded many videos directed to Children to Disney channels labeled as NMFK, thereby labeling them by default as NMFK.[57]

42.     Indeed, Defendants have been on notice of Disney's noncompliance since at least June 2020, when YouTube informed Disney that YouTube had changed designations on more than 300 Disney videos from NMFK to MFK.[58] Even then, Disney did not change its policy of designating videos at the channel level and continued to fail to properly designate individual videos as MFK.[59] In addition, despite other than changing the designations on 300 Disney videos, Plaintiffs are unaware of any other remedial action taken by Defendants to protect Children from Mislabeled Videos. These videos included child-directed subject matter, visual content, and music from The Incredibles, Coco, Toy Story, Frozen, and Mickey Mouse.[60]

43.     On September 2, 2025, the FTC announced Disney would pay $10 million to settle allegations that the company allowed personal data to be collected from Children who viewed kid-directed videos on YouTube without notifying parents or obtaining their consent as required by COPPA.[61] The settlement "penalizes

---

[56] Complaint, ¶¶ 27-39, *U.S.A. v. Disney Worldwide Services, Inc., et al.*, No. 2:25-cv-08223 (C.D. Cal. Sept. 2, 2025), ECF No. 1, available at https://www.ftc.gov/system/files/ftc_gov/pdf/DisneyComplaint.pdf (last accessed October 16, 2025) ("*USA v. Disney* Complaint").

[57] *Id.*

[58] *Id.*

[59] *See* YouTube Settlement Announcement.

[60] *Id.*

[61] *See* Disney Settlement Announcement.

1    Disney's abuse of parents' trust, and, through a mandated video-review program,

2    makes room for the future of protecting kids online—age assurance technology."[62]

3      44. The Department of Justice, upon notification and referral from the FTC,

4    alleged that Disney Worldwide Services, Inc. and Disney Entertainment Operations

5    LLC violated the COPPA Rule by failing to properly label videos that it uploaded to

6    YouTube as "Made for Kids."[63] The mislabeling allowed Disney, through YouTube,

7    to collect personal data from Children viewing child-directed videos and use that data

8    for targeted advertising to Children.[64]

9      45. The FTC voted 3-0 to refer the complaint and proposed order to the

10   Department of Justice.[65] The Commission authorizes the filing of a complaint when

11   it has "reason to believe" that the named defendant is violating or is about to violate

12   the law and it appears to the Commission that a proceeding is in the public interest.[66]

13     46. Chairman Ferguson, joined by Commissioners Melissa Holyoak and

14   Mark R. Meador, stated "As alleged, Disney circumvented YouTube's data-

15   collection safeguards for MFK videos and channels and collected and monetized

16   personal information of those who viewed child-directed videos in violation of

17   COPPA. This conduct is illegal no matter who carries it out. But Disney is no

18   ordinary company. It has made its mark on American society as the world's leading

19   creator of content for children. . . . Given its carefully curated reputation, this alleged

20   conduct by Disney would be particularly troubling."[67]

21     47. Chairman Ferguson noted, "This settlement follows a thorough

22   _____
     [62] *Id.*

23   [63] *USA v. Disney* Complaint, ¶¶ 2, 27-43.

24   [64] *Id.*

     [65] *See* YouTube Settlement Announcement.

25   [66] *Id.*

26   [67] *See* Andrew N. Ferguson, Statement of Chairman Andrew N. Ferguson Joined by
     Commissioner Melissa Holyoak and Commissioner Mark R. Meador re: United

27   States v. Disney Worldwide Servs., et al. (Sept. 2, 2025),
     https://www.ftc.gov/system/files/ftc_gov/pdf/2025.09.02-2123075-disney-

28   statement-ferguson-holyoak-meador.pdf (last accessed October 16, 2025).

investigation carried out by the Commission's intrepid staff. The order imposes on Disney a civil penalty of $10 million. In my view, this civil penalty is fair given Disney's misconduct—illegally enriching itself by monetizing personal information collected from users watching child-directed videos without their parents' consent—in light of its self-curated reputation as one of the world's most trusted brand names in children's entertainment."[68]

## PLAINTIFFS' EXPERIENCES

48.     Hannah Bui is the parent of three minor children under the age of 13.

49.     Plaintiff Bui's family resided in Chatsworth, in the city and county of Los Angeles, California, until September 2020, when the family moved to Greenville, South Carolina. Prior to moving to South Carolina, Plaintiff Bui's child watched Mislabeled Videos in Los Angeles, California. Plaintiff Bui's children have continued to watch Mislabeled Videos while living in South Carolina and while on a family trip back to California in 2023. While watching Mislabeled Videos, Defendants collected Plaintiff Bui's children's personal information, and they were subjected to adult-only YouTube features, including autoplay, user comments, and targeted advertising.

50.     Janice LeBlanc is the parent of one minor child under the age of 13.

51.     Plaintiff LeBlanc resides in Rehoboth, Massachusetts. Her child has watched Mislabeled Videos in Massachusetts. While watching Mislabeled Videos, Defendants collected her child's personal information, and they were subjected to adult-only YouTube features, including autoplay, user comments, and targeted advertising.

52.     Teresa Contreras is the parent of five minor children under the age of 13.

53.     Plaintiff Contreras resides in Bakersfield, California. Her children have watched Mislabeled Videos in California. While watching Mislabeled Videos,

---

[68] *Id.*

1    Defendants collected her children's personal information, and they were subjected to
2    adult-only YouTube features, including autoplay, user comments, and targeted
3    advertising.

4                                      **TOLLING**

5        **A.    Continuing Act Tolling**

6        54.    As the creators and publishers of Mislabeled Videos, Defendants have
7    had actual knowledge since at least on or about June 2020, when YouTube informed
8    Disney it had changed designations of more than 300 Disney videos from NMFK to
9    MFK.[69]

10       55.    Thus, at all relevant times, Defendants possessed continuous knowledge
11   of its mislabeling of children's videos and yet knowingly continued to allow
12   Mislabeled Videos to remain on YouTube and accessible to under-thirteen-year-olds,
13   allowing Defendants to collect Children's user data and subject Children to targeted
14   behavioral advertising, and age-inappropriate features such as autoplay and
15   comments. Plaintiffs' and Class Members' claims are not time-barred.

16       56.    Plaintiffs and Class Members could not have reasonably discovered and
17   could not have known of these facts, which were not publicly disclosed until the FTC
18   announced its $10 million settlement with Disney mere weeks ago. Indeed, prior to
19   the settlement announcement, Defendants knowingly failed to disclose material
20   information regarding the Mislabeled Videos. Accordingly, no potentially relevant
21   statute of limitations should apply.

22       **B.    Fraudulent Concealment Tolling**

23       57.    Any applicable statutes of limitations have been tolled or have not run
24   for the additional reason that Defendants knowingly, actively, and fraudulently
25   concealed the facts as alleged herein. Defendants had actual and constructive
26   knowledge of its Mislabeled Videos since at least on or about June 2020.

27       58.    Plaintiffs and Class Members have been kept in ignorance of

28   _____
     [69] *See* YouTube Settlement Announcement.

information essential to the pursuit of their claims, and the safety of their children's user data, without any fault or lack of diligence on their part. Defendants' concealment of its Mislabeled Videos prevented Plaintiffs and Class Members from being on notice of any facts or information that would have required them to inquire whether Defendants fulfilled their duties under the law and, if not, whether Plaintiffs and Class Members had legal recourse.

59.    At all times prior to, during, and since the uploading and posting on YouTube of its Mislabeled Videos, Defendants have been under a continuing duty to disclose the true facts. Because of Defendants' willful concealment of material information concerning the Mislabeled Videos over a period of years, Defendants are estopped from relying on any statute of limitations defense as to the claims of Plaintiffs and Class Members.

**C.    Discovery Rule Tolling**

60.    Plaintiffs and Class Members could not have discovered through the exercise of reasonable diligence that Disney's Mislabeled Videos were labeled NMFK the within the time period of any applicable statutes of limitation because, as described herein, only Defendants had that information, and Defendants were concealing that information from the public.

61.    Indeed, Plaintiffs only recently became aware that Disney's Mislabeled Videos were labeled NMFK.

62.    Plaintiffs and other Class Members could not have reasonably discovered and could not have known of facts that would have caused a reasonable person to suspect, that Defendants were producing and publishing the Mislabeled Videos despite being aware they violated YouTube policies and COPPA.

63.    As such, no potentially relevant statute of limitations should be applied.

**CLASS ACTION ALLEGATIONS**

64.    Pursuant to Rule 23(a), (b)(2), and (b)(3), Plaintiffs brings this action on behalf of themselves and others similarly situated.

65.    Specifically, Plaintiffs seek to represent a Nationwide Class, defined as:

"All persons who while under the age of thirteen watched child-directed content on YouTube that was uploaded by Disney and not designated as 'Made for Kids' in the United States from 2020 to present" (the "Class" or "Class Members").

66.    In the alternative, Plaintiffs seeks to represent Subclasses defined as:

"All persons who while under the age of thirteen watched child-directed content on YouTube that was uploaded by Disney and not designated as 'Made for Kids' in the state of South Carolina from 2020 to present" (the "South Carolina Subclass"); and

"All persons who while under the age of thirteen watched child-directed content on YouTube that was uploaded by Disney and not designated as 'Made for Kids' in the state of Massachusetts from 2020 to present" (the "Massachusetts Subclass");[70]

67.    Excluded from the Class and Subclasses are (i) each Defendant, any entity in which a Defendant has a controlling interest or which has a controlling interest in any Defendant, and Defendants' legal representatives, predecessors, successors and assigns; (ii) governmental entities; (iii) Defendants' employees, officers, directors, agents, and representatives and their family members; and (iv) the Judge and staff to whom this case is assigned, and any member of the judge's immediate family.

**CLAIMS FOR RELIEF**

**COUNT I**
**Negligence**

68.    Plaintiffs reallege each and every allegation contained above and incorporate by reference all other paragraphs of this Complaint as if fully set forth

---

[70] Plaintiffs identify below the counts currently pled on behalf of the Massachusetts Subclass. Concurrently with the filing of the instant Complaint, Plaintiff LeBlanc is sending to Defendants a demand for relief under Section 9(3) of the Massachusetts Regulation of Business and Consumer Protection Act, Mass. Gen. Laws Ch. 93A, §§ 1, *et seq*. Upon response, or non-response within thirty (30) days, to this demand letter, Plaintiffs shall file an Amended Complaint to seek money damages, including double or treble damages, attorneys' fees and costs, on behalf of Plaintiff LeBlanc and the Massachusetts Subclass pursuant to Mass. Gen. Laws Ch. 93A, § 9(3A).

1    herein.

2        69.    Plaintiffs bring this Count on behalf of themselves and the Class. In the

3    alternative, Plaintiffs R.B., A.B., and C.B. bring this Count on behalf of themselves

4    and the South Carolina Subclass. In the alternative, Plaintiff N.L. brings this Count

5    on behalf of herself and the Massachusetts Subclass.

6        70.    Defendants had a duty of care to safeguard the personal information of

7    Plaintiffs and Class Members, including not to collect, store or otherwise misuse

8    Plaintiffs' and Class Members' personal information, nor to cause the collection,

9    storage or misuse of such personal information.

10       71.    Defendants breached their duties to Plaintiffs and Class Members by

11   posting Mislabeled Videos on YouTube, failing to exercise reasonable care to ensure

12   videos it posted that contained content intended for and directed at Children were

13   properly labeled "Made for Kids" on YouTube's platforms, collecting Plaintiffs' and

14   Class Members' personal information without their consent or the consent of their

15   guardians, using Plaintiffs' and Class Members' personal information for targeted

16   advertising, including targeted behavioral advertising, exposing Plaintiffs and Class

17   Members to age-inappropriate YouTube features such as autoplay and comments,

18   and failing upon discovery of its breach to take adequate action to stop its breach and

19   inform Plaintiffs and Class Members and their guardians of its breach.

20       72.    Defendants knew, or should have known, of the risks posed to Plaintiffs

21   and Class Members by Defendants' failure to properly label the Mislabeled Videos

22   as "Made for Kids." These risks were reasonably foreseeable to Defendants, who

23   operate a sophisticated, multinational, children's entertainment company that profits

24   off the online streaming of child-directed content and are thus well informed

25   regarding the technological, legal and regulatory framework surrounding its

26   YouTube video platforms.

27       73.    Defendants breached their duties to Plaintiffs and Class Members by

28   failing to provide fair, reasonable, or adequate safeguards of their personal

1    information, failing to properly label the Mislabeled Videos as "Made for Kids,"
2    collecting Plaintiffs' and Class Members' personal information without their consent
3    or the consent of their guardians, using Plaintiffs' and Class Members' personal
4    information for targeted advertising, including targeted behavioral advertising,
5    exposing Plaintiffs and Class Members to age-inappropriate YouTube features such
6    as autoplay and comments, and failing upon discovery of its breach to take adequate
7    action to stop its breach and inform Plaintiffs and Class Members and their guardians
8    of its breach.

9         74.    But for Defendants' wrongful and negligent breach of its duties owed to
10    Plaintiffs and Class Members, Plaintiffs and Class Members would not have been
11    injured.

12         75.    Defendants acted with wanton disregard for the security of Plaintiffs'
13    and Class Members' personal information.

14         76.    The injury and harm suffered by Plaintiffs and Class Members was the
15    reasonably foreseeable result of Defendants' breach of their duties. Defendants knew
16    or should have known that they were failing to meet their duties, and that Defendants'
17    breach would cause Plaintiffs and Class Members to experience the foreseeable
18    harms associated with the exposure of their personal information.

19         77.    As a direct and proximate result of Defendants' negligent conduct,
20    Plaintiffs and Class Members have suffered injury, including but not limited to: (i)
21    the loss of the opportunity of how their personal information is used; (ii) the
22    compromise, publication, and/or theft of their personal information; (iii) the
23    continued risk to their personal information, which may remain in Defendants'
24    possession and is subject to further unauthorized disclosures so long as Defendants
25    fail to undertake appropriate and adequate measures to protect Plaintiffs' and Class
26    Members' personal information in their continued possession; and (iv) future costs
27    in terms of time, effort, and money that will be expended to prevent, detect, contest,
28    and repair the impact of the personal information compromised as a result of

1 Defendants' breach of their duties for the remainder of the lives of Plaintiffs and

2 Class Members.

3      78.   As a direct and proximate result of Defendants' negligent conduct,

4 Plaintiffs and Class Members face an increased risk of future harm.

5      79.   As a direct and proximate result of Defendants' negligent conduct,

6 Plaintiffs and Class Members and are entitled to damages in an amount to be proven

7 at trial.

8
## COUNT II
### Negligence Per Se
9

10      80.   Plaintiffs reallege each and every allegation contained above and

11 incorporate by reference all other paragraphs of this Complaint as if fully set forth

12 herein.

13      81.   Plaintiffs bring this Count on behalf of themselves and the Class. In the

14 alternative, Plaintiffs R.B., A.B., and C.B. bring this Count on behalf of themselves

15 and the South Carolina Subclass. In the alternative, Plaintiff N.L. brings this Count

16 on behalf of herself and the Massachusetts Subclass.

17      82.   Pursuant to the Children's Online Privacy Protection Act ("COPPA"),

18 15 U.S.C.A. §§ 6501 *et seq.*, Defendants were and are required to obtain parental

19 consent prior to the collection of Plaintiffs' and Class Members' personal

20 information. COPPA mandates that websites, apps and other online services that are

21 directed to children under 13 have a privacy policy, notify parents about what

22 personal information they collect, obtain verifiable parental consent before collecting

23 such information, give parents access to their child's information, and maintain

24 reasonable security for collected data.

25      83.   Pursuant to other state and federal laws requiring the confidentiality of

26 personal information, including, but not limited to, COPPA, and the right to privacy

27 under the California Constitution, Art. 1, § 1, Defendants had a duty to implement

28 reasonably safeguards to protect Plaintiffs' and Class Members' personal

1    information.

2         84.    Defendants breached their duties to Plaintiffs and Class Members under

3    COPPA, among other laws, by failing to provide fair, reasonable, or adequate

4    safeguards of their personal information, failing to properly label the Mislabeled

5    Videos as "Made for Kids," collecting Plaintiffs' and Class Members' personal

6    information without their consent or the consent of their guardians, using Plaintiffs'

7    and Class Members' personal information for targeted advertising, including targeted

8    behavioral advertising, exposing Plaintiffs and Class Members to age-inappropriate

9    YouTube features such as autoplay and comments, and failing upon discovery of its

10   breach to take adequate action to stop its breach and inform Plaintiffs and Class

11   Members and their guardians of its breach.

12        85.    Defendants' failure to comply with applicable laws and regulations

13   constitutes negligence per se.

14        86.    But for Defendants' wrongful and negligent breach of its duties owed to

15   Plaintiffs and Class Members, Plaintiffs and Class Members would not have been

16   injured.

17        87.    The injury and harm suffered by Plaintiffs and Class Members was the

18   reasonably foreseeable result of Defendants' breach of its duties. Defendants knew

19   or should have known that it was failing to meet its duties, and that Defendants'

20   breach would cause Plaintiffs and Class Members to experience the foreseeable

21   harms associated with the exposure of their personal information.

22        88.    As a direct and proximate result of Defendants' negligent conduct,

23   Plaintiffs and Class Members face an increased risk of future harm.

24        89.    As a direct and proximate result of Defendants' negligent conduct,

25   Plaintiffs and Class Members have suffered injury and are entitled to damages in an

26   amount to be proven at trial.

27

28

**COUNT III**
**Invasion of Privacy**

90.    Plaintiffs reallege each and every allegation contained above and incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

91.    Plaintiffs bring this Count on behalf of themselves and the Class. In the alternative, Plaintiffs R.B., A.B., and C.B. bring this Count on behalf of themselves and the South Carolina Subclass. In the alternative, Plaintiff N.L. brings this Count on behalf of herself and the Massachusetts Subclass.

92.    Plaintiffs and Class Members had a reasonable and legitimate expectation of privacy in the personal information that Defendants misappropriated, used, and disclosed without authorization.

93.    Defendants owed a duty to Plaintiffs and Class Members to keep their personal information confidential.

94.    Defendants failed to protect and release to unknown and unauthorized third parties the personal information of Plaintiffs and Class Members.

95.    By failing to keep Plaintiffs' and Class Members' personal information safe, knowingly utilizing the unsecure FTA software, and disclosing personal information to unauthorized parties for unauthorized use, Defendants unlawfully invaded Plaintiffs' and Class Members' privacy by, among others, (i) intruding into Plaintiffs' and Class Members' private affairs in a manner that would be highly offensive to a reasonable person; (ii) improperly using their personal information properly obtained for a specific purpose for another purpose, or disclosing it to a third party; (iii) failing to adequately secure their personal information from disclosure to unauthorized persons; and (iv) enabling the disclosure of Plaintiffs' and Class Members' personal information without consent.

96.    Defendants knew, or acted with reckless disregard of the fact that, a reasonable person in Plaintiffs' and Class Members' position would consider their

1    actions highly offensive.

2    97.   Defendants knew or acted with reckless disregard of the risks posed to

3    Plaintiffs and Class Members by Defendants' failure to properly label the Mislabeled

4    Videos as "Made for Kids."

5    98.   As a proximate result of such unauthorized disclosures, Plaintiffs' and

6    Class Members' reasonable expectations of privacy in their personal information was

7    unduly frustrated and thwarted, causing damages to Plaintiffs and Class Members.

8    99.   In failing to protect Plaintiffs' and Class Members' personal

9    information, and in disclosing Plaintiffs' and Class Members' personal information,

10   Defendants acted with malice and oppression and in conscious disregard of Plaintiffs'

11   and Class Members' rights to have such information kept confidential and private.

12   100.  Plaintiffs seek injunctive relief on behalf of the Class, restitution, as well

13   as any and all other relief that may be available at law or equity. Unless and until

14   enjoined, and restrained by order of this Court, Defendants' wrongful conduct will

15   continue to cause irreparable injury to Plaintiffs and Class Members. Plaintiffs and

16   Class Members have no adequate remedy at law for the injuries in that a judgment

17   for monetary damages will not end the invasion of privacy for Plaintiffs and the

18   Classes.

19                              **COUNT IV**
                            **Unjust Enrichment**
20

21   101.  Plaintiffs incorporate by reference and re-alleges all prior paragraphs of

22   this complaint as though fully set forth herein.

23   102.  Plaintiffs bring this Count on behalf of themselves and the Class. In the

24   alternative, Plaintiffs R.B., A.B., and C.B. bring this Count on behalf of themselves

25   and the South Carolina Subclass. In the alternative, Plaintiff N.L. brings this Count

26   on behalf of herself and the Massachusetts Subclass.

27   103.  Plaintiffs and Class Members conferred benefits on Defendants by

28   viewing Defendants' Mislabeled Videos.

1  104. Defendants have knowledge of such benefits.

2  105. Defendants have been unjustly enriched in retaining the revenues

3 derived from Plaintiffs' and Class Members' user data. Retention of those monies

4 under these circumstances is unjust and inequitable because Defendants procured

5 Plaintiffs' and Class Members' user data unlawfully without consent.

6  106. Because Defendants' retention of the non-gratuitous benefits conferred

7 on it by Plaintiffs and Class Members is unjust and inequitable, Defendants must pay

8 restitution to Plaintiffs and the Class Members for its unjust enrichment, as ordered

9 by the Court.

10
        **COUNT V**
    **Violation of the Constitutional Right to Privacy**

11     **California Constitution, Art. 1, § 1**

12  107. Plaintiffs reallege each and every allegation contained above and

13 incorporate by reference all other paragraphs of this Complaint as if fully set forth

14 herein.

15  108. Plaintiffs bring this Count on behalf of themselves and the Class.

16  109. Plaintiffs and Class Members have a constitutionally protected privacy

17 interest in their personal information.

18  110. Plaintiffs and Class Members have a reasonable expectation of privacy

19 in their personal information.

20  111. Defendants violated that constitutionally protected right to privacy by

21 disclosing Plaintiffs' and Class Members' personal information to third parties. As a

22 result of Defendants' unlawful conduct alleged herein, the privacy rights of Plaintiffs

23 and Class Members have been violated, and Plaintiffs and Class Members have been

24 harmed as a result thereof. Accordingly, Plaintiffs and Class Members are entitled to

25 compensatory and punitive damages, attorneys' fees.

26
        **COUNT VI**
  **Violations of the California Consumers Legal Remedies Act**

27     **Cal. Civil Code §§1750, *et seq*.**

28  112. Plaintiffs incorporate by reference and re-alleges all prior paragraphs of

1    this complaint as though fully set forth herein.

2         113.   Plaintiffs bring this Count on behalf of themselves and the Class.

3         114.   The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*

4    ("CLRA"), is a comprehensive statutory scheme that is to be liberally construed to

5    protect consumers against unfair and deceptive business practices in connection with

6    the conduct of businesses providing goods, property or services to consumers

7    primarily for personal, family, or household use.

8         115.   In accordance with the liberal application and construction of the

9    CLRA, application of the CLRA to all class members is appropriate, given that

10   Defendants' conduct as described herein originated from California.

11        116.   Plaintiffs and the Class Members are "consumers" who sought and

12   acquired "services" in the form of Defendants' Mislabeled Videos within the

13   meaning of California Civil Code section 1761.

14        117.   Each Defendant is a "person" within the meaning of California Civil

15   Code section 1761(c).

16        118.   The application of the California Consumer Legal Remedies Act to the

17   putative Class in this action is appropriate because Defendants' wrongful conduct

18   alleged herein, includes but is not limited to Defendants' marketing and sale of

19   defective, unsafe Mislabeled Videos in the state of California, and Defendants' unfair

20   and deceptive marketing emanating from its headquarters in Burbank, California.

21        119.   The California Consumer Legal Remedies Act, Cal. Civ. Code

22   §1770(a)(5) & (7) provide, in part, as follows:

23            (a)    The unfair methods of competition and unfair or deceptive acts or

24                   practices listed in this subdivision undertaken by any person in a

25                   transaction intended to result or that results in the sale or lease of

26                   goods or services to any consumer are unlawful:

27                                          . . .

28            (5)    Representing    that    goods    or    services    have

- 26 -                                    Case No. 2:25-cv-09920

1                                         sponsorship, approval, characteristics, ingredients,

2                                         uses, benefits or quantities which they do not

3                                         have . . .;

4                                          . . .

5         (7)     Representing that goods or services are of a

6                    particular standard, quality, or grade, or that goods

7                    are of a particular style or model, if they are of

8                    another.

9      120.   Defendants violated California Consumer Legal Remedies Act, Civil

10 Code section 1770(a)(5), *inter alia*, by representing that the Mislabeled Videos have

11 characteristics, uses or benefits, which they do not have, and/or Civil Code

12 section 1770(a)(7) by representing that the Mislabeled Videos are of a particular

13 standard, quality, or grade, even though they are of another. Such conduct includes,

14 among other things:

15          a.     Producing, marketing, and selling the Mislabeled Videos to

16 Children, while representing that the Mislabeled Videos were not made for kids; and

17          b.     Marketing and selling the Mislabeled Videos while concealing

18 material facts from Plaintiffs and Class Members regarding the designation of the

19 Mislabeled Videos as "Not Made for Kids."

20      121.   Concurrently with the filing of the instant Complaint, Plaintiffs are

21 sending a CLRA notice of violation and demand letter to Defendants. Upon response,

22 or non-response within thirty (30) days, to this notice, Plaintiffs shall file an

23 Amended Complaint to seek monetary relief from Defendants to provide actual,

24 compensatory, statutory, and/or punitive damages.

25                                       **COUNT VII**

              **Violation of the California Unfair Competition Law**

26                  **Cal. Bus. & Prof. Code §§ 17200, *et seq.***

27      122.   Plaintiffs reallege each and every allegation contained above and

28 incorporate by reference all other paragraphs of this Complaint as if fully set forth

1    herein.

2         123.   Plaintiffs bring this Count on behalf of the Classes.

3         124.   Defendants have engaged in unfair competition within the meaning of

4    California Business & Professions Code section 17200, *et seq.*, because Defendants'

5    conduct, as described herein, violated COPPA, the FTC's Children's Online Privacy

6    Protection Rule, 16 C.F.R. Part 312, the California Constitutional Right to Privacy,

7    California Constitution, Art. 1, § 1, and the California Consumers Legal Remedies

8    Act, Cal. Civil Code §§ 1750, *et seq.* Further, Defendants breached their duties

9    pursuant to the FTC Act, 15 U.S.C. § 45, to implement reasonable safeguards to

10   protect Plaintiffs' and Class Members' personal information.[71]

11        125.   Plaintiffs have standing to pursue this claim because they have been

12   injured by virtue of the wrongful conduct alleged herein.

13        126.   The Unfair Competition Law is, by its express terms, a cumulative

14   remedy, such that remedies under its provisions can be awarded in addition to those

15   provided under separate statutory schemes and/or common law remedies, such as

16   those alleged in the other Counts of this Complaint. *See* Cal. Bus. & Prof. Code §

17   17205.

18        127.   As a direct and proximate cause of Defendants' conduct, which

19   constitutes unlawful business practices as alleged herein, Plaintiffs and Class

20   Members have been damaged and suffered ascertainable losses due to: (i) actual

21   identity theft; (ii) the loss of the opportunity of how their personal information is

22   used; (iii) the compromise, publication, and/or theft of their personal information;

23   (iv) out-of-pocket expenses associated with the prevention, detection, and recovery

24   from identity theft, tax fraud, and/or unauthorized use of their personal information;

25   (v) the continued risk to their personal information, which may remain in Defendants'

26   possession and is subject to further unauthorized disclosures so long as Defendants

27   fail to undertake appropriate and adequate measures to protect Plaintiffs' and Class

28   ───────────────
     [71] See USA v. Disney Complaint.

Members' personal information in its continued possession; and (vi) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the personal information compromised as a result of Defendants conduct for the remainder of the lives of Plaintiffs and Class Members.

128.   Plaintiffs and Class Members are thereby entitled to recover restitution and equitable relief, including disgorgement or ill-gotten gains, refunds of moneys, interest, reasonable attorneys' fees, filing fees, and the costs of prosecuting this class action, as well as any and all other relief that may be available at law or equity.

**COUNT VIII**
**Declaratory Relief**
**28 U.S.C. § 2201**

129.   Plaintiffs reallege each and every allegation contained above and incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

130.   Plaintiffs bring this Count on behalf of themselves and the Class.

131.   An actual controversy has arisen and now exists between Plaintiffs and the putative Classes on the one hand, and Defendants on the other, concerning Defendants' failure to protect Plaintiffs' and Class Members' personal information in accordance with applicable state and federal laws and regulations. Plaintiffs and the Class Members contend that Defendants failed to maintain adequate and reasonable privacy practices to protect their personal information while on the other hand, Defendants contend they have complied with applicable state and federal laws and regulations to protect their personal information.

132.   Accordingly, Plaintiffs and Class Members are entitled to and seek a judicial determination of whether Defendants have performed, and are performing, their statutory and common law obligations necessary to protect and safeguard Plaintiffs' and Class Members' personal information from further unauthorized, access, use, and disclosure, or insecure disposal.

133.   A judicial determination of the rights and responsibilities of the parties

over Defendants' privacy practices is necessary and appropriate at this time so that: (1) that the rights of the Plaintiffs and the Classes may be determined with certainty for purposes of resolving this action; and (2) so that the Parties will have an understanding of Defendants' obligations in the future given its continuing legal obligations and ongoing relationships with Plaintiffs and Class Members.

**COUNT IX**
**Violations of the South Carolina Unfair Trade Practices Act**
**S.C. Code §§ 39-5-10, *et seq.***

134.   Plaintiffs R.B., A.B., and C.B. ("Plaintiffs" for the purposes of this Count) incorporate by reference and re-alleges all prior paragraphs of this complaint as though fully set forth herein.

135.   Plaintiffs R.B., A.B., and C.B. bring this Count on behalf of themselves and the South Carolina Subclass.

136.   Each Defendant is a "person," as defined by S.C. Code Ann. § 39-5-10(a).

137.   South Carolina's Unfair Trade Practices Act prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C. Code Ann. § 39-5-20.

138.   Defendants advertised, offered, or sold goods or services in South Carolina and engaged in trade or commerce directly or indirectly affecting the people of South Carolina, as defined by S.C. Code Ann. § 39-5-10(b).

139.   Defendants have engaged in unfair or deceptive acts or practices in the conduct of a trade or commerce by failing to properly label the Mislabeled Videos as "Made for Kids," collecting Plaintiffs' and Class Members' personal information without their consent or the consent of their guardians, failing to provide fair, reasonable, or adequate safeguards of Plaintiffs' and Class Members' personal information, using Plaintiffs' and Class Members' personal information for targeted advertising, including targeted behavioral advertising, exposing Plaintiffs and Class Members to age-inappropriate YouTube features such as autoplay and comments,

and failing upon discovery of its breach to take adequate action to stop its breach and inform Plaintiffs and Class Members and their guardians of its unfair and deceptive acts and practices.

140.  Defendants' business acts and practices offend an established public policy, or are immoral, unethical, or oppressive.

141.  Defendants' unfair and deceptive acts or practices adversely affected the public interest because such acts or practices have the potential for repetition; Defendants engage in such acts or practices as a general rule; and such acts or practices impact the public at large, including millions of South Carolina Subclass members that viewed Mislabeled Videos and had their personal information nonconsensually acquired, recorded and used by Defendants as a result.

142.  Defendants' unfair and deceptive acts or practices have the potential for repetition because the same kinds of actions occurred in the past, as described herein, thus making it likely that these acts or practices will continue to occur if left undeterred.

143.  Defendants' violations present a continuing risk to Plaintiffs and South Carolina Subclass members as well as to the general public.

144.  Defendants acted intentionally, knowingly, and maliciously to violate South Carolina's Unfair Trade Practices Act, and recklessly disregarded Plaintiffs' and South Carolina Subclass members' rights. Defendants' knowledge of the Mislabeled Videos since at least June of 2020, put it on notice that it was collecting Plaintiffs' and South Carolina Subclass Members' personal information without consent and in violation of YouTube's policies, as well as state and federal law. In light of this conduct, punitive damages would serve the interest of society in punishing and warning others not to engage in such conduct and would deter Defendants and others from committing similar conduct in the future.

145.  As a direct and proximate result of Defendants' unfair and deceptive acts or practices, Plaintiffs and South Carolina Subclass members have suffered and

1  will continue to suffer injury, ascertainable losses of money or property, and
2  monetary and non-monetary damages, including but not limited to: (i) the loss of the
3  opportunity of how their personal information is used; (ii) the compromise,
4  publication, and/or theft of their personal information; (iii) the continued risk to their
5  personal information, which may remain in Defendants' possession and is subject to
6  further unauthorized disclosures so long as Defendants fail to undertake appropriate
7  and adequate measures to protect Plaintiffs' and Class Members' personal
8  information in their continued possession; and (iv) future costs in terms of time,
9  effort, and money that will be expended to prevent, detect, contest, and repair the
10  impact of the personal information compromised as a result of Defendants' breach of
11  their duties for the remainder of the lives of Plaintiffs and Class Members.

12       146.   Plaintiffs and South Carolina Subclass members seek all monetary and
13  non-monetary relief allowed by law, including damages for their economic losses,
14  treble damages, punitive damages, injunctive relief, and reasonable attorneys' fees
15  and costs.

16                        **PRAYER FOR RELIEF**

17       WHEREFORE, Plaintiffs demand judgment on behalf of themselves and
18  members of the Class and Subclasses as follows:

19       A. For an order certifying the Class under Rule 23 of the Federal Rules of Civil
20          Procedure and naming Plaintiffs as representatives of the Class, and
21          Plaintiffs' attorneys as Class Counsel;

22       B. For an order declaring that Defendants' conduct violates the statutes
23          referenced herein;

24       C. For an order finding in favor of Plaintiff, the Class on all counts asserted
25          herein;

26       D. For actual, compensatory, statutory, and punitive damages in amounts to be
27          determined by the Court and/or jury;

28       E. For injunctive relief enjoining the illegal acts detailed herein;

F. For prejudgment interest on all amounts awarded;

G. For an order of restitution and all other forms of equitable monetary relief;

H. For an order awarding Plaintiffs and the Class their reasonable attorneys'
   fees and expenses and costs of suit.

### JURY TRIAL DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,

**KAPLAN FOX & KILSHEIMER LLP**

DATED: October 16, 2025        By: /s/ *Justin B. Farar*
                                   Justin B. Farar

Justin B. Farar (SBN 211556)
12400 Wilshire Boulevard, Suite 910
Los Angeles, CA 90025
Telephone: 310-614-7260
Facsimile: 310-614-7260
Email: *jfarar@kaplanfox.com*

**KAPLAN FOX & KILSHEIMER LLP**
Laurence D. King (SBN 206423)
Matthew B. George (SBN 239322)
Blair E. Reed (SBN 316791)
Clarissa R. Olivares (SBN 343455)
Walter B. Howe (SBN 244680)
1999 Harrison Street, Suite 1501
Oakland, CA 94612
Telephone: 415-772-4700
Facsimile: 415-772-4707
Email:  *lking@kaplanfox.com*
        *mgeorge@kaplanfox.com*
        *breed@kaplanfox.com*
        *colivares@kaplanfox.com*
        *whowe@kaplanfox.com*

*Attorneys for Plaintiffs and the Proposed Class*